IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RITA SAWYER,                         :
              Petitioner          :
                                 :
     vs.                            :    CIVIL NO. 1:CV-12-1269
                                 :
SUPERINTENDENT NANCY                 :    (Judge Caldwell)
DRIOUX, *et al.*,                    :
              Respondents         :
                                 :

*M E M O R A N D U M*

I.  *Introduction*

      Rita Sawyer, currently confined at SCI-Muncy in Muncy, Pennsylvania, has

filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The

petition challenges Sawyer's 2005 conviction in the Court of Common Pleas of Lebanon

County, Pennsylvania, for the first-degree murder of her mother, Mary Sawyer.[1]

Petitioner was sentenced to life in prison.  Named as respondents are Nancy Giroux,

Muncy's superintendent at the time the petition was filed,[2] and the Attorney General of

the Commonwealth of Pennsylvania.

      The petition makes the following Sixth Amendment claims of ineffective

assistance of counsel.  First, trial counsel was ineffective in not objecting to the trial

court's jury instructions concerning voluntary intoxication.  Petitioner claims the

---

    [1]  Petitioner was also convicted of the unlawful administration of a drug in violation of
35 Pa. Stat. Ann. § 780-113(a)(14).

    [2]  Petitioner misspelled Giroux's name as "Drioux."

instructions erroneously placed the burden on her to prove by a preponderance of the evidence that her voluntary intoxication rendered her incapable of forming the specific intent to kill required for first-degree murder. Second, trial counsel was ineffective in not requesting jury instructions on Pennsylvania's corpus delicti rule since Petitioner had presented evidence that her mother had died of natural causes, not homicide.

We provide some basic background, taken from the opinion of the Pennsylvania Superior Court denying postconviction relief. (Doc. 11, ECF pp. 49-50, *Commonwealth v. Sawyer*, No. 2 MDA 2010 (Pa. Super. Ct. Mar. 9, 2011). Petitioner's elderly mother was suffering from dementia and lived in a nursing home. Petitioner, an anesthesiologist, was struggling with depression and alcoholism, and had agreed to enter an inpatient rehabilitation program. She was scheduled to enter the program on Monday, June 21, 2004. The day before, on June 20, Petitioner signed her mother out of the nursing home for an overnight visit at Petitioner's home, the first time she had ever done so. On the way to the program on Monday, Petitioner told the driver, who worked for the rehabilitation facility, that her mother had died and that she was in a bed at Petitioner's home.[3] Law enforcement was notified. They discovered a syringe on the dresser and a pillow on the floor with the mother's saliva on it. Petitioner admitted to the police that she

---

[3] There was evidence that Petitioner attempted to commit suicide on the morning of June 21. Her partner's wife found her in her car in the garage with the motor running. (Doc. 15-2, ECF pp. 8-9). Four bottles of Sevofurane, an anesthetic, were also found in the car. (Doc. 15-8, ECF p. 10; doc 15-8, ECF p. 2). There was also a suicide note, which mentioned that Petitioner 's mother could be found dead in the house. (Doc. 15-8, ECF p. 11).

had given her mother some brandy the night of June 20 and that she may have given her an injection of Versed, a sedative.

II.  *Standard of Review*

Petitioner's claims were rejected by the state courts.  Our habeas review of the state courts' resolution of the claims is governed by 28 U.S.C. § 2254(d)(1) and (d)(2).  Under subsection (d)(1), we may grant the writ if the state courts' adjudication of the claims was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent.  A state court judgment is "contrary to" Supreme Court precedent when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court.  *Williams v. Taylor,* 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000).  "A state-court decision will also be contrary to" Supreme Court "precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent."  *Id.* at 406, 120 S.Ct. 1519-20.

"[A] state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply."  *McMullin v. Tennis,* 562 F.3d 231, 236 (3d Cir. 2009)(cited cases omitted).  "The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the

state court applied federal law erroneously or incorrectly." *Jacobs v. Horn,* 395 F.3d 92, 100 (3d Cir. 2005)(cited cases omitted). If "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief cannot be granted. *Harrington v. Richter,* ___ U.S. ___, ___, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)(quoted case omitted).

Under subsection (d)(2), we may grant the writ if the state courts' adjudication of the claims "resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "A state court decision is based on 'an unreasonable determination of the facts' only if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013)(quoted case omitted). State-court fact finding "is presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

Finally, federal habeas relief is only available for violations of federal law, not state law. *Swarthout v. Cooke*, ___ U.S. ___, ___, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). As stated in 28 U.S.C. § 2254(a), the petitioner's "custody" must be "in violation of the Constitution or laws or treaties of the United States."

III.  *Discussion*

A.  *Petitioner Has Presented Cognizable Claims Under the Sixth*
   *Amendment Even Though They Are Based on Counsel's*
   *Alleged Failure to Employ Applicable State Law*

Respondents argue that Petitioner's claims fail because neither one is

based on a violation of federal law.  If true, we need go no further since habeas corpus

protects only against violations of federal law.  But Respondents' argument is meritless.

Respondents may be correct that there is no federal right to jury instructions on voluntary

intoxication, *see Montana v. Egelhoff*, 518 U.S. 37, 56, 116 S.Ct. 2013, 2024, 135

L.Ed.2d 361 (1996)(a defendant has no due process right to have the jury consider

evidence of voluntary intoxication on whether he had the requisite state of mind for the

offense)(plurality opinion), or to jury instructions on the corpus delicti rule.  *See Hayward*

*v. Johnson*, 508 F.2d 322, 330 n.28 (3d Cir. 1975)("the corpus delicti rule has never been

termed a constitutional requirement"); *Autry v. Estelle*, 706 F.2d 1394, 1407 (5th Cir.

1983)("a state rule of 'corpus delicti' has no independent constitutional footing").  But

when a petitioner makes a Sixth Amendment claim for ineffective assistance of counsel,

the claim can be based on counsel's failure to invoke applicable state law.  *See Blystone*

*v. Horn*, 664 F.3d 397, 421-22 (3d Cir. 2011)("Even assuming that the state court

correctly concluded that Blystone had no constitutional right to an independent mental

health evaluation prior to sentencing, it was certainly within the trial court's *discretion* to

appoint an expert had counsel so requested.")(emphasis in original).  *Blystone* relied on

*Everett v. Beard*, 290 F.3d 500 (3d Cir. 2002), *abrogated on other grounds as recognized*

*in Priester v. Vaughn*, 382 F.3d 394, 397-98 (3d Cir. 2004), where the Third Circuit stated that "[a] reasonably competent attorney patently is required to know the state of the applicable law . . ." *Id.* at 509. In *Everett*, the court of appeals reviewed an ineffectiveness claim based on counsel's failure to know Pennsylvania law on accomplice liability for first-degree murder. *See also Medina v. Diguglielmo*, 461 F.3d 417, 427-28 (3d Cir. 2006)(entertaining a federal ineffectiveness claim based on counsel's failure to employ Pennsylvania law on the testimonial competency of a witness under the age of fourteen).

We therefore turn to the merits of the claims.

B. *The Strickland Standard For Ineffective Assistance of Counsel*

Sixth Amendment claims for ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-prong test to establish ineffective assistance of counsel. First, counsel's performance must be deficient. *Jacobs v. Horn,* 395 F.3d 92, 102 (3d Cir. 2005)(citing *Strickland*). Second, counsel's deficient performance must have prejudiced the defense. *Id.* (quoting *Strickland*). A petitioner must "show 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 105 (quoting *Strickland*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt

might have been established if counsel acted differently." *Harrington*, *supra*, ___ U.S. at _

__, 131 S.Ct. at 791.  "In assessing prejudice, courts 'must consider the totality of the

evidence before the judge or jury.'" *Berghuis v. Thompkins*, 560 U.S. 370, 130 S.Ct.

2250, 2264, 176 L.Ed.2d 1098 (2010)(quoting *Strickland*).  "[A] verdict or conclusion only

weakly supported by the record is more likely to have been affected by errors than one

with overwhelming record support." *Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir.

2013)(quoted cases and internal quotation marks omitted).


    C. *Petitioner's Claim Based on the Failure to Object to Erroneous*
       *Jury Instructions on Voluntary Intoxication Lacks Merit*

      As noted, Petitioner claims trial counsel was ineffective in not objecting to

the trial court's jury instructions concerning voluntary intoxication.  Petitioner claims the

instructions erroneously placed the burden on her to prove by a preponderance of the

evidence that her voluntary intoxication rendered her incapable of forming the specific

intent to kill required for first-degree murder.  In doing so, Petitioner argues the court

relieved the Commonwealth of its burden of establishing every element of the crime

beyond a reasonable doubt.

      Pennsylvania law permits a defendant to present a diminished capacity

defense in murder cases -- to introduce evidence of voluntary intoxication or drug use --

to reduce first-degree murder to third-degree murder.  18 Pa. Con. Stat. Ann. § 308

("evidence of [voluntary] intoxication or drugged condition of the defendant may be

offered by the defendant whenever it is relevant to reduce murder from a higher degree

-7-

to a lower degree of murder").  One of the elements of first-degree murder is the specific

intent to kill, *Commonwealth v. Sepulveda*, ___ Pa. ___ , ___, 55 A.3d 1108, 1144-45

(2012), and a defendant may be so intoxicated that it prevents her from forming that

intent.  *Id.* at 1122.

> In order to be entitled to a voluntary intoxication instruction,
> there must be some evidence that the defendant is
> overwhelmed or overpowered by alcohol or drugs to the point
> of losing his faculties or sensibilities.  *Commonwealth v. Tilley,*
> 528 Pa. 125, 136, 595 A.2d 575, 580 (1991).  Mere evidence
> of the consumption of alcohol or drugs and appearing
> intoxicated is not sufficient to support a conclusion that a
> defendant is overwhelmed or overpowered to be incapable of
> forming the requisite specific intent to kill.  *Id.*

*Commonwealth v. Galvin*, 603 Pa. 625, 651, 985 A.2d 783, 798 (2009).  Additionally, as a

matter of state law, if a defendant introduces sufficient evidence of her intoxication, the

jury cannot be instructed that she has any burden of proof to establish her diminished

capacity.  *Commonwealth v. Rose*, 457 Pa. 380, 389, 321 A.2d 880, 884 (1974).  Rather,

the Commonwealth always bears the burden of proving every element of the offense of

first-degree murder, including specific intent to kill.  *Id.*, 321 A.2d at 884.

Petitioner introduced the following evidence concerning her ingestion of

alcohol during the period from Sunday, June 20, 2004, through the early morning hours

of Monday, June 21, 2004.[4]  On June 21, 2004, at 2:57 p.m., a sample of Petitioner's

blood was drawn and her blood alcohol content (BAC) tested at .127%.  (Doc. 13-17,

ECF p. 16).  Working backward from this calculation, and assuming all the alcohol had

---

[4]  The death of Petitioner's mother occurred sometime during this time frame.

been absorbed by midnight on June 20, Dr. Lawrence Guzzardi testified that her BAC would have been .272% at 6:00 a.m. on June 21, .380% at midnight of June 20, and somewhere between those figures between midnight and 6:00 a.m. (Doc. 13-17, ECF pp. 21-22). There was also evidence that Petitioner had consumed a liter of brandy the night of June 20 and that there were empty alcohol bottles at her home. (Doc. 15-1, ECF p. 25).

Dr. Hostetter, Petitioner's psychiatric expert, testified that she was suffering from an alcoholic blackout the night of June 20-June 21. (Doc. 13-16, ECF pp. 2). Dr. Hostetter testified that a person in an alcoholic blackout is not storing any memories. "Other cognitive functions . . . could still be intact. The person could still talk, they could still walk." (Doc. 13-15, ECF p. 17). On cross-examination, Dr. Hostetter agreed that, essentially, a person in an alcoholic blackout could make decisions, and act voluntarily, during that time but simply not remember it afterwards. (Doc. 15-16, ECF pp. 18-19).

The trial court agreed with Petitioner that she was entitled to a diminished capacity defense. Petitioner concedes the court initially gave a correct charge on this defense; she claims error when the court immediately followed up the correct charge with a charge that imposed a duty on Petitioner to prove the defense by a preponderance of the evidence. The crux of the incorrect charge is as follows:

> Now, in making this finding, as I indicated, the Commonwealth had the burden of proof -- the defense had the burden of proof, I'm sorry -- let me jump back for a second. Voluntary intoxication, what we're talking about here, may only reduce first degree murder to third degree murder if you find by a preponderance of the evidence that Rita Sawyer

was overwhelmed by the affects of alcohol to the point of losing control of faculties and sensibilities.  It's important that you listen to the type of burden of proof that the Defendant bears in this case.

Again, let me repeat it.  Voluntary intoxication may only reduce first degree murder to third degree murder if you find by a preponderance of the evidence that Rita Sawyer was overwhelmed by the affects of alcohol to the point of losing control of her faculties and sensibilities.  It's important for you to understand that the burden of proof with reasonable doubt to that aspect of things, the fact that she was overwhelmed by the effects of alcohol to the point of losing control of her faculties and sensibilities is a lesser burden of proof than I have talked about already.  That proof beyond a reasonable doubt is a greater burden of proof than preponderance of the evidence.  Proof by a preponderance of the evidence is proof that it's more likely than not that is true.

If you find that the Commonwealth -- that the Defendant has produced that amount of evidence then you need to look at the rest of the evidence in this case to determine whether or not the Commonwealth has met its burden of overcoming the evidence presented by the defense with regard to that issue.  And again, the Commonwealth's burden as I described it to you -- the Commonwealth's burden of disproving the defense is proof beyond a reasonable doubt.

(Doc. 13-22, ECF pp. 3-5).

The superior court rejected Petitioner's ineffectiveness claim for two reasons.  First, she was not entitled to a voluntary intoxication charge in any event because she "failed to offer any evidence to show she was so overwhelmed or overpowered to become incapable of forming the requisite specific intent to kill."  (Doc. 11, ECF p. 60, *Commonwealth v. Sawyer*, No. 2 MDA 2010 (Pa. Super. Ct.).  The superior court based this reasoning on the admission by Petitioner's own psychiatric

expert that an alcoholic blackout affects only a person's memory of events and not her ability to make decisions or act voluntarily. Second, the charge when viewed as a whole was proper as it instructed the jury that the Commonwealth bore the burden of proving all the elements of the crime, and disproving all defenses, beyond a reasonable doubt. *Id.*[5]

Petitioner challenges both rulings, but we need only consider her challenge to the first one. Petitioner insists that she was entitled to go to the jury on the issue of diminished capacity on the basis of her BAC alone. Hence her lawyer was ineffective when he failed to object to instructions placing the burden on her to prove diminished capacity. However, we cannot grant relief on this claim because we cannot say that the superior court's ruling was contrary to clearly established Supreme Court precedent or an unreasonable application of that precedent. Petitioner cites no Supreme Court case granting relief under equivalent circumstances, i.e., that on the basis of BAC alone a defendant has a federal right under certain circumstances to voluntary-intoxication instructions. At least one other case indicates the superior court's position should not be disturbed. *See Breakiron v. Horn*, No. 00-CV-300, 2008 WL 4412057, at *38 (W.D. Pa. Sept. 24, 2008)(failure of counsel to discover the petitioner's history of alcoholic blackouts or to present expert testimony concerning such blackouts was not ineffective as alcoholic blackouts affected only the petitioner's memory and not his cognitive ability

---

[5] We look to the superior court's opinion as the last reasoned opinion of the state courts. *See Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009) (quoting *Bond v. Beard,* 539 F.3d 256, 289–90 (3d Cir. 2008)).

to form the specific intent to kill), *rev'd in part on other grounds*, 642 F.3d 126 (3d Cir. 2011).

We therefore reject the ineffectiveness claim based on the trial court's voluntary-intoxication instructions.

### D. *Petitioner's Claim Based on the Failure to Request Jury Instructions on Pennsylvania's Corpus Delicti Rule Lacks Merit*

Petitioner next claims that trial counsel was ineffective in not requesting jury instructions on Pennsylvania's corpus delicti rule. The corpus delicti rule guards against the danger of a conviction based solely on the defendant's confession or admissions when in fact no crime occurred. *Commonwealth v. Reyes*, 545 Pa. 374, 381, 681 A.2d 724, 727 (1996).

> The Pennsylvania Supreme Court has described the application of the rule as a "two-tiered approach" having a "dual level of proof." *Reyes,* 681 A.2d at 728. The first tier pertains solely to the admissibility of the defendant's out-of-court confession. *Id.* at 727. At this stage, the trial court must determine whether the Commonwealth has established by a preponderance of the evidence (apart from the confession) that a crime has in fact been committed. *Id.* at 727–28. Once the trial court admits the confession, the jury may not consider the confession unless the Commonwealth proves the *corpus delicti* beyond a reasonable doubt. *Id.* at 728; *Tallon,* 387 A.2d at 81.

*Jacobs v. Horn*, 395 F.3d 92, 109-110 (3d Cir. 2005). At the second tier, a defendant is entitled to an instruction that the jury cannot make use of her confession or admissions to determine her guilt until they have decided that the Commonwealth has proven beyond a

-12-

reasonable doubt that a crime occurred. *See Commonwealth v. Ahlborn*, 441 Pa. Super. Ct. 296, 302, 657 A.2d 518, 521 (1995).

In the instant case, the Commonwealth presented the testimony of Dr. Barbara Bollinger that the cause of death was "asphyxia with blunt trauma of neck" with administration of Versed, an anti-anxiety medication, (Doc. 13-18, ECF p. 1), as a "significant contributory cause." (Doc. 13-4, ECF pp. 18-19). She opined that the manner of death was homicide. (*Id.*, ECF p. 19). As part of the autopsy, Dr. Bollinger noted: (1) an 80% occlusion of the victim's right coronary artery and a 60 to 70% occlusion of the left coronary artery; (2) tiny hemorrhages (petechiae) at the bottom of both eyes; (3) moderate to marked atherosclerosis of the aorta. (Doc. 13-3, ECF p. 20-21). Dr. Bollinger noted that the occlusions could be a cause of death, but not in this case. (*Id.*, ECF p. 23). She also examined the neck and found no bruising of the skin. (Doc. 13-4, ECF p. 14). She did find what she called a fresh hemorrhage on a neck muscle, near the left thyroid hyoid area. (Doc. 13-4, ECF p. 4). She opined that the skin of the neck could show no bruising yet there could be a hemorrhage of an internal muscle if there was "gentle compression" on the neck. (Doc. 13-4, ECF pp. 14-15). She also found no fracture of the hyoid bone, a horseshoe-shaped structure that surrounds the larynx, or the thyroid horns, elevated structures on the hyoid bone. (Doc. 13-6, ECF pp. 2-3; p. 4). Dr. Bollinger has never had a case of manual strangulation where there was

no evidence of injury to the skin of the neck, the hyoid bone or thyroid horns. (*Id.*, ECF p. 4).[6]

Petitioner presented testimony that her mother died from natural causes. Dr. Michael Baden, a defense expert, testified that the victim died "the way most of us die, from severe coronary arteriolosclerosis," (Doc. 13-10, ECF p. 7), "that the hardening of the arteries that she had caused a fatal cardioarythmia while she laid in bed at the daughter's home." (*Id.*, ECF p. 8). Dr. Baden opined that the skin of the neck could be intact yet there is a hemorrhage in an interior neck muscle if the decedent fell against an object and hit her neck. (Doc. 13-9, ECF p. 8). Dr. Guzzardi testified that the amount of Versed in the victim would have had no effect on her level of consciousness or respiration. (Doc. 13-18, ECF pp. 3-4).

What could be considered incriminating admissions were entered into evidence. On June 22, 2004, Trooper Biever interviewed Petitioner. When she was asked if she killed her mother, she responded, "I don't think so. I don't see that I would have." (Doc. 15-1, ECF p. 23). Petitioner's sister testified that on the night of June 21, Petitioner telephoned her and told her their mother had died, and that Petitioner said, "I don't know what I did." (Doc. 15-6, ECF p. 3). Finally, an entry in Petitioner's diary was entered into evidence. As summarized by the superior court: "Appellant revealed feelings of anger in being the only child taking care of her parents when her siblings were

---

[6] The Commonwealth's theory, however, was that Petitioner had smothered her mother, not strangled her. (Doc. 15-4, ECF p. 74).

unavailable to do so.  Appellant expressed bitterness towards her parents as she felt they

never appreciated her attempts to please them."  (Doc. 11, ECF p. 51, *Commonwealth v.*

*Sawyer*, No. 2 MDA 2010 (Pa. Super. Ct.).  In her closing, the prosecutor used the "I

don't think so" statement as evidence of guilt, arguing that an innocent person would

have emphatically denied murdering her mother.  (Doc. 15-5, ECF p. 2).

        The trial court instructed the jury that the Commonwealth had the burden of

proving each offense and every element of the offense beyond a reasonable doubt.

(Doc. 13-21, ECF pp. 5-6).  The court went on to note the disagreement each side had

about the cause of death, that the Commonwealth contended that Petitioner had caused

her mother's death and that Petitioner, by way of Dr. Baden, said that she died of natural

causes.  The court told the jury that they would have to decide whether the

Commonwealth had proven beyond a reasonable doubt that Petitioner had murdered her

mother.  (Doc. 13-21, ECF p. 10).  The court did not give a corpus delicti instruction but

did give an instruction on medical testimony and "criminal causation":

> Now, folks, it's important for you to keep in mind in addition
> to this preliminary discussion of the types of murder, the fact
> that causation is an element in this case.  And I talked about
> or mentioned causation earlier.  You cannot find Rita Sawyer
> caused the death of Mary Sawyer unless you are satisfied
> beyond a reasonable doubt that Rita Sawyer's conduct was a
> direct cause of Mary Sawyer's death.
>
> In order to be a direct cause of death a person's conduct
> must be a direct and substantial factor in bringing about that
> death.
>
> Now, in this case, the Defendant, Rita Sawyer, claims that
> the Commonwealth's medical testimony does not sufficiently

establish criminal causation beyond a reasonable doubt. She alleges that the Commonwealth has not proven the elements of causation beyond a reasonable doubt and that is true where the Commonwealth's evidence only establishes a Defendant's conduct probably caused the death or only proves causation within a reasonable degree of medical certainty.

*It's a well settled proposition of law that medical testimony may be too uncertain to establish criminal causation beyond a reasonable doubt.* At trial the Commonwealth's evidence in this case or their burden in this case is to prove causation to support its allegations of criminal homicide. And Rita Sawyer alleges that against her the proof here concerned is the pathologist's findings of petechiae, a subcutaneous bruise on the right side of Mary Sawyer's larynx and administration of an unknown quantity of a sedative, Versed. *You must decide as the finders of fact whether this evidence proves causation beyond a reasonable doubt.*

(Doc. 13-21, ECF pp. 20-21).[7]

The superior court rejected Petitioner's ineffectiveness claim. It did not decide if trial counsel's conduct was deficient in not requesting a corpus delicti instruction. Instead, it focused on a lack of prejudice. It began with two observations on the instructions. First, the court decided that as a whole they informed the jury that the Commonwealth had the burden of proving each element of the offense beyond a reasonable doubt. (Doc. 11, ECF p. 57, *Commonwealth v. Sawyer*, No. 2 MDA 2010 (Pa. Super. Ct.). Second, quoting the last two paragraphs of the instructions above, it noted that the medical-causation instructions told the jury that it had to find beyond a reasonable doubt that Mary Sawyer's death was caused by criminal conduct and not by

---

[7] We have highlighted the two sentences the superior court emphasized in its analysis.

natural means.  Next, the court examined the record and decided that "compelling

evidence" of Petitioner's guilt showed that Petitioner "cannot establish the jury would

have acquitted her had it received a specific *corpus delicti* instruction."  (*Id.*, ECF p. 57).

The court prefaced this analysis by noting:

> Although Appellant presented evidence that Mary could
> have died from natural causes, the jury chose to believe the
> Commonwealth's expert testimony explaining how the autopsy
> and toxicology results supported its conclusion that Mary's
> death was a homicide.

(Id.).  It then elaborated:

> Looking at the circumstantial evidence presented, although
> she had never done so before, Appellant took Mary out for an
> overnight visit when she had to leave for rehabilitation early
> the next morning and did not tell any of her family or friends
> she was doing so.  Appellant seemed to disregard the nurses'
> instructions for her mother's care and gave her elderly mother
> alcohol and an injection of anesthetic which she was not
> prescribed.  Appellant delayed notifying her siblings of Mary's
> death, but informed her veterinarian who was scheduled to
> visit Appellant's home that morning to see Appellant's horse.
> Hence, as Appellant has not shown actual prejudice, we
> cannot find counsel to be ineffective on this ground.

(*Id.*, ECF pp. 57-58).

Petitioner argues she is entitled to de novo review of the corpus delicti claim

because the superior court did not use the *Strickland* standard to evaluate it.  She asserts

that the court used a "but for" standard instead.  As support, she points to the court's

language saying that Petitioner "cannot establish the jury would have acquitted her had it

received a specific *corpus delicti* instruction."  Petitioner asserts the *Strickland* standard

does not require her to show she would have been acquitted, only that there is a

reasonable probability that the jury would have acquitted her had they been given a corpus delicti instruction, meaning in other words, that she only had to show there was a reasonable probability that the failure to give a corpus delicti instruction undermined confidence in the outcome.

We disagree that Petitioner is entitled to de novo review of this claim. First, the superior court acknowledged that *Strickland* controlled its analysis. It then did set forth a three-prong state-law test for ineffectiveness, *Beneshunas v. Klem*, 137 F. App'x 510, 514 (3d Cir. 2005),[8] but that test is the equivalent of the *Strickland* standard. *Id.* Second, the superior court's use of "shorthand" language in its prejudice analysis does not in itself mean that it did not follow *Strickland*. *See Woodford v. Visciotti*, 537 U.S. 19, 23-24, 123 S.Ct. 357, 359, 154 L.Ed.2d 279 (2002). Third, even if the standard the court did use was not correct under *Strickland*, under 28 U.S.C. § 2254(d)(1) we must still defer to the superior court's decision as long as its reasoning was consistent with *Strickland*. *See Cox v. Horn*, 174 F. App'x 84, 87 (3d Cir. 2006)(nonprecedential). Petitioner must therefore show that the superior court's resolution of the corpus delicti claim was contrary to *Strickland* or an unreasonable application of *Strickland*.

---

[8] As set forth in *Beneshunas*, that state-law test is as follows:

(1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and, (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Id.* at 514 (quoting *Commonwealth v. Kimball*, 555 Pa. 299, 312, 724 A.2d 326, 333 (1999)). In Petitioner's case, the statement of the standard can be found at Doc. 11, ECF p. 54, *Commonwealth v. Sawyer*, No. 2 MDA 2010 (Pa. Super. Ct.).

Petitioner next argues that the superior court's corpus delicti ruling was based on a unreasonable determination of the facts in light of the evidence presented at trial. *See* 28 U.S.C. § 2254(d)(2). Petitioner bases this argument on statements the court made in its opinion, that Petitioner "presented testimony that [her mother] could have died of coronary artery disease," (Doc. 11, ECF p. 51, *Commonwealth v. Sawyer*, No. 2 MDA 2010 (Pa. Super. Ct.), and that Petitioner "presented evidence that [her mother] could have died from natural causes." (*Id.*, ECF p. 57). Petitioner asserts that she presented evidence not just that her mother could have died from coronary artery disease but that in fact she did die from that disease. Petitioner maintains that the superior court's mistake eliminated the choice between murder and natural death required for application of the corpus delicti rule.

We disagree. In our view, the superior court's use of the phrase "could have died" was not a determination of fact, merely the court's way of saying that Petitioner had created a jury issue whether her mother's death was natural or murder, written in light of the jury's decision to side with the Commonwealth on the issue. Moreover, this phrasing was not used to eliminate the ineffectiveness claim based on the corpus delicti rule. The court addressed that claim directly.

Turning to the merits of the claim, we conclude that it fails because Petitioner has not shown the superior court's resolution of the corpus delicti claim was contrary to *Strickland* or an unreasonable application of *Strickland*. As noted, the superior court decided that Petitioner could not show prejudice for two reasons. First, the

trial court had given instructions that told the jury they had to find the medical evidence showed that Petitioner had caused her mother's death, and if not, she could not be found guilty, essentially corpus delicti instructions. Additionally, the court had looked at the instructions as a whole, noting that they put the burden of proof on the Commonwealth to prove the elements of the crime beyond a reasonable doubt. We cannot conclude that this reading of the instructions, and the conclusion the superior court drew from it, was unreasonable under *Strickland*. Second, the court looked to the evidence at trial and decided that the outcome would not have been different, or in *Strickland* terms, that there was no reasonable probability that the result would have been different. Looking at the evidence ourselves, we cannot conclude that this ruling was unreasonable under *Strickland*.

Petitioner asserts that she was prejudiced by counsel's failure to ask for a corpus delicti instruction. She argues that if the jury had been given a corpus delicti instruction -- an instruction that they could not rely on her incriminating statements to decide if her mother's death was the result of homicide -- a reasonable juror or jury could have found the testimony of Drs. Baden and Guzzardi precluded a finding of homicide beyond a reasonable doubt. For her, it follows that there was a reasonable probability that the outcome would have been different and hence prejudice has been established. She maintains that she "need only show the evidence warranted corpus delicti instructions and they were ignored." (Doc. 1, ECF p. 39).

We think Petitioner is using an incorrect standard. *Strickland*'s prejudice prong requires a review of all the evidence, not just review of the evidence directly bearing on counsel's alleged deficient performance. The limited review undertaken by Petitioner would be relevant to *Strickland*'s first prong, whether counsel's performance was deficient, not the second prong, whether there was prejudice.

IV. *Conclusion*

We will issue an order denying the section 2254 petition. The order will also deny a certificate of appealability, based on the analysis in this memorandum. However, Petitioner is advised that she has the right for thirty (30) days to appeal our order denying her 2254 petition, *see* 28 U.S.C. § 2253(a); Fed. R. App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent her from doing so, as long as she also seeks a certificate of appealability from the court of appeals. *See* Federal Rule of Appellate Procedure 22; Local Rule of Appellate Procedure 22.1.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: October 23, 2013